Maria Sadler et al. *v.* S. G. Sadler et al.

1. Nuncupative Will.　*Land.*
　Under the statutes of this State, as at common law, land cannot pass under a nuncupative will.

2. Same.　*Testamentary words.　Time when spoken.*
　Whether the words must be spoken so shortly before death as to afford no convenient time to write them.　*Quære?*

3. Same.　*Last sickness.　Construction of statute.*
　*Semble,* that the statutory "last sickness" in which the words must be spoken, would not cover a lingering disease which did not incapacitate.

Appeal from the Chancery Court of Chickasaw County.

Hon. L. Haughton, Chancellor.

The case is stated in the opinion of the court.

*A. Y. Harper,* for the appellants.

1. Land cannot pass by nuncupative will unless the statute of this State authorizes it.　*Jenner* v. *Harper,* 1 P. Wms. 247; *Dale* v. *Smith,* 64 N. C. 52; Redf. on Wills, 201. Our statute does not admit of such a construction.　Code 1880, sects. 1262, 1266, 1269.　Upon this point there is no room for doubt.

2. The other question is not so clear.　Chancellor Kent's opinion in the case of *Prince* v. *Hazelton,* 20 Johns. 510, announces the accepted doctrine.　Before the time of Henry VIII. it was settled in England that the testator must be *in extremis* in order to make a valid nuncupative will.　1 Redf. on Wills, 186; Yamell's Will, 4 Rawle, 185; *Werkheiser* v.

*Werkheiser*, 6 Watts & S. 184. The general current of authority is this way; and such occasional departures as *Johnson* v. *Glascock*, 2 Ala. 242, and *Harrington* v. *Steco*, 82 Ill. 50, do not serve to alter it.

*A. Y. Harper*, made an oral argument also.

*W. T. Houston*, for the appellees.

1. The question whether realty passes under a nuncupative will does not arise on demurrer to a petition for probate of such a will, which also embraces personal property. But if it did our decisions all incline to hold that land will pass under such a will. They certainly do hold that a nuncupative will, embracing land and personalty, is admissible to probate ; and that is enough to meet this ground of demurrer.

2. It cannot be held that the words "last sickness" mean *in articulo mortis* where used in the Code of 1880, for among other things the Code provides that the expenses of the decedent's "last sickness" shall be paid. Shall it be decided that the worthy doctor; who attended his patient through weary weeks of fever, is only entitled to be paid for the visit made while the sufferer is *in extremis,* and when his services are generally useless? The fact is that the statute avoids technical terms, and the meaning of the common words used must depend on the facts in each case, and cannot be settled by demurrer.

*W. T. Houston*, argued the case orally.

*Orr & Orr*, on the same side.

1. No such words as "*in extremis*" are in the statute, and no rule of construction authorizes counsel to inject into the statute such extreme language. As to Chancellor Kent, he was shocked by Mrs. Hazelton, and if Jones had died three minutes after giving her his property the chancellor's highly moral nature would have prompted a decision that the alleged testator's mind was affected by the approach of death. In the case of *Johnson* v. *Glascock*, 2 Ala. 239, the chancellor's opinion in *Prince* v. *Hazelton*, 20 Johns. 510, is reviewed and

a better rule announced. In *Harrington* v. *Steco*, 82 Ill. 53, the cases are compared and the one in Alabama followed. In this direction sets the tide of American decisions. *Sykes* v. *Sykes*, 20 Am. Dec. 45, and notes.

2. Can land be devised by nuncupative will? Why not? It is not prohibited by the Statute of Frauds. In *Woods* v. *Ridley*, 27 Miss. 146, this court admitted to probate a nuncupative will devising realty. In *Buck* v. *Stoval*, 27 Miss. 725, the same thing was done. And these precedents could be indefinitely multiplied. Why probate a nullity? In Ohio (10 Ohio, 463; 12 Ohio, 381) realty was passed by nuncupation. English statutes are not in force here unless re-enacted. 57 Miss. 341. If such a limitation had been intended by our Legislature, it would have been inserted in the statute. It did not exist at common law. Our statute, so far from prohibiting the nuncupation of land, impliedly authorizes this to be done. It would be as easy to perpetrate fraud through a written will as a verbal one The guards in the statute are ample. If any unfairness had been suspected, this would have been urged as a ground of objection.

Chalmers, J., delivered the opinion of the court.

A petition for the probate of an alleged nuncupative will was demurred to: First, because it assumed to convey real estate by nuncupation; and, second, because the petition showed upon its face that the alleged testamentary words were spoken two months before the death of the decedent.

The first ground of demurrer was well taken, but went only to so much of the alleged will as undertakes to pass the realty. It is clear that lands cannot pass under a nuncupative will. At common law land was not devisable at all, and only became so in England by virtue of the statutes of 32 Henry the Eighth, and of 12 Charles the Second, which required that they should be in writing, signed by the testator, and attested by three witnesses. Personalty was always bequeathable by

---

---

a verbal will, and so remained under these statutes, though the right of so conveying it was greatly restricted by requirements imposed by the statutes as to the mode and manner of making the bequests. These acts have been substantially adopted in this as well as in most of the other American States, and it is quite universally held, except where some peculiarity of language compels a different construction, that nuncupative wills are valid only as to the personalty embraced in them. 1 Redf. on Wills, 201. In *Smithdeal* v. *Smith*, 64 N. C. 52, although the statute permitted the " estate " of a testator to be conveyed by nuncupative will, the court restricted the general term " estate " to personal estate only, upon the ground that it was not to be supposed that the Legislature intended, by using a word so vague and general, to depart so widely from the common and statutory law of England and America as to authorize real estate to pass by spoken words.

Our statute in relation to nuncupative wills (Code of 1880, sect. 1266) speaks of property being "*bequeathed*" in that manner; language wholly inappropriate to realty. That our reports show several cases where nuncupative wills, which assumed to convey realty, have been admitted to probate, is of no consequence, since in these cases personalty was also disposed of, and it was therefore necessary that the wills should be probated. The question as to their effect upon the realty, not having been raised by counsel, was not considered by the court. Certainly no distinct announcement of this court can be found declaring such a will effective to pass real estate, and such a doctrine is contrary to sound principle as well as to the whole current of authority.

The second ground of demurrer is intended to present the question whether it is essential to the validity of a nuncupative will that the testamentary words should be spoken when the party speaking them is *in extremis*, or at least at a period so shortly before death, that there was afforded thereafter no

convenient time or opportunity to have reduced them to writing, as was held by Chancellor Kent in the case of *Prince* v. *Hazelton*, 20 Johns. 510, or whether the more liberal rule announced by the Supreme Court of Alabama, in *Johnson* v. *Glascock*, 3 Ala. 239, and followed in several other States, to the effect that if the words are spoken in the last illness and under a sense of approaching death, it will be sufficient, though the party in fact lived long enough thereafter to have had both time and opportunity to have given to his testamentary desires the more definite and enduring form of a written memorial. We decline to decide this question on demurrer. Our statute only declares that the words shall be spoken during " the last sickness," and we prefer not to give an exact meaning to these words until we shall have the concrete facts of some case before us. It seems clear that if the words are spoken during the last sickness, no lapse of time that may intervene between the speaking and the death of the party should invalidate them, if his physical or mental condition disabled him thereafter to alter his desires or gave no opportunity to reduce them to writing. It seems equally clear on the other hand, that the words " last sickness " should not be extended over a lingering disease covering months or weeks, during which, and after the spoken words, there was afforded, both by the mental and physical condition of the party, every opportunity and inducement to prepare a written will. Nuncupative wills are not favored in law, and are rather tolerated, from the supposed necessity of the case, than accepted as affording the most satisfactory method of ascertaining the testamentary desires of the decedent. We think it neither expedient nor wise to attempt to lay down any exact rule on the subject, if, indeed, any such rule can be framed, until we have the facts of an actual case before us.

Decree overruling demurrer affirmed, and defendants required to answer in sixty days. In no event will the will be admitted to probate except as to personalty.