## AS TO THE VALIDITY OF A NUNCUPATIVE WILL.

Circuit Court of Cuyahoga County.

SAMPSON W. PARSONS ET AL V. THOMAS WASS ET AL.

Decided, December 22, 1905.

*Nuncupative Wills—Invalid as to Real Estate—Valid as to Personalty
—Witness to Whom it is Attempted to Make a Devise May be
Disinterested.*

1. The fact that a nuncupative will attempts to dispose of both real
   and personal property does not make it invalid as to the personal
   property.
2. Where the witnesses to a nuncupative will are also devisees of real
   estate under it, but there is no evidence tending to show that at the
   time the will was made they expected to benefit from it, it is error
   for the court to direct a verdict declaring the will invalid.

*Kerruish, Chapman & Kerruish,* for plaintiff in error.

*H. Remington, T. H. Johnson, C. R. Megerth, E. Hitchens,
E. P. Wilmot* and *A. W. Lamson,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

In the summer of 1900 Robert Wass, then about ninety years old, and his aged wife Charlotte, were living together in a house on Central avenue, in Cleveland, Ohio. In the early part of August of that year the wife died and about six weeks thereafter Robert Wass also died. So far as is known neither Charlotte nor Robert had near relatives of their blood living in Cleveland or its vicinity. For some years before they died both suffered more or less from the infirmities of age, and their wants were largely attended to by Lucy Douglass and Isabella Mead, housewives who lived near Robert and Charlotte's residence.

On September 17th of that year, two days after Robert's death, said Isabella Mead and Lucy Douglass went before a notary public and reduced to writing certain utterances of Robert Wass, alleged to have been made by him on the afternoon of September 14th, the day preceding his death, which words so reduced to writing they then and there subscribed as the ver-

bal last will of said Robert Wass.   On October 3d thereafter said
paper writing was duly admitted to probate by the Probate
Court of Cuyahoga County, Ohio, as the verbal last will and
testament of Robert Wass.   By the provisions of said will Lucy
Douglass and Isabella Mead, the witnesses thereto, were to receive
certain real property and the remainder of his property was to
be distributed as follows: five hundred dollars to Wesley Par-
sons and the residue remaining after the satisfaction of said
legacy to the children of Harry Parsons, share and share alike.
Wesley Parsons and Harry Parsons were nephews of Richard
Parsons, who was the first husband of Charlotte Wass.

Within two years after said will was admitted to probate
certain persons claiming to be the heirs at law and next of kin
to Robert Wass, began proceedings in the Court of Common Pleas
of Cuyahoga county, to contest the will.   Afterward they were
joined in said contest by other persons claiming also to be related
to Robert Wass, by still others claiming to be related to Robert's
deceased wife, Charlotte, from whom they allege most of Robert's
property came, and by the state of Ohio claiming that both
Robert and Charlotte died without heirs or next of kin and that
the property escheated to the state.

As shown by the bill of exceptions, at the trial of the case in
the common pleas court, counsel for the proponents of the will
offered and read the will, as certified by the probate judge.   He
then said: "I'll not read the testimony that was taken before
the probate court.   I will now read the application for probate
and the journal entry attached," which he did, as also the
certificate of the probate judge.

Thereupon the court asked the question: "Is the testimony
part of the record of probate?"   And the bill of exceptions con-
tinues as follows: "By Mr. Bacon (of counsel for proponents):
Yes, but for the purpose of this hearing the admission to probate
and the fact that it was admitted to probate makes a *prima
facie* case for the defendants—the fact that it was offered and the
journal entry and the order of the court.   Well, I will read the
testimony also.

By Mr. Wilmot (of counsel for contestants): We object to that part of the record being offered. By the Court: We will determine all these things at once. You may proceed.

Thereupon Mr. Bacon in behalf of Wesley Parsons, Sampson W. Parsons, Henry B. Parsons, Jr., John T. Parsons, Susan E. Turner, Mary T. Parsons, Martha A. Parsons and Cora E. Parsons read in evidence the testimony taken upon application to probate the nuncupative will of Robert Wass, which is marked for identification Defendant's Exhibit C. Said testimony is in the words and figures following, to-wit:

Then follows the said testimony in full.

Thereupon counsel for contestants moved the court to direct the jury to return a verdict that the paper writing here offered in evidence is not the valid last will of Robert Wass, deceased.

"By Mr. Bacon: There is no proof that these people have any right in court. This will has been probated and nothing has been presented against it.

. "By the Court: Their proposition is that it is for the court to say whether or not there are some essential elements which are not present in this will.

"By Mr. Bacon: Before Your Honor passes upon that question we should like to make a motion.

"By the Court: It is not necessary. The defendants have introduced evidence and rested. The question is whether they have any right upon their own showing, so I don't think that question is pertinent."

Thereupon, over objections of the proponents of the will the court directed a verdict, as requested, to which plaintiffs in error excepted, and judgment being entered, the case was brought here for review.

In this court plaintiffs in error, who were the "parties sustaining the will" in the common pleas court, contend that said court erred in directing a verdict for two reasons:

First. Because the testimony of the witnesses to the will, taken on its probate, was not properly before the common pleas court for its consideration and ought not to have been considered by it.

Second.  Even considering said testimony, still the *prima facie* case made by the will and probate remained sufficient to sustain the will until the contestants offered their evidence, as required by the statute (R. S., 5864).

That the court may direct a verdict in a suit to contest a will, under certain circumstances, has been settled.  *Wagner* v. *Ziegler,* 44 O. S., 60.

We are inclined to think it equally clear that the testimony of the witnesses to the will, taken in the probate court, is no part of the evidence required to be offered by the proponent of a will, under Section 5864, wherein it is provided that: "He shall offer the will and probate and rest."  *Keeteman* v. *Metzger,* 23 C. C., 61.

But in this case we have a record which shows that the proponents of the will read said testimony over the objection of the contestants.  Having voluntarily offered such additional evidence, if its effect is to destroy the *prima facie* case made by the will and probate thereof, we think the parties reading said testimony must abide the consequences.

This brings us to a consideration of the second question raised by plaintiffs in error, that the effect of said testimony is not to destroy their *prima facie* case; and to understand the propositions made by defendants in error on this point, we must read the statute relating to nuncupative wills:

"Sec. 5991.  A verbal will, made in the last sickness, shall be valid in respect to personal estate, if reduced to writing, and subscribed by two competent disinterested witnesses, within ten days after the speaking of the testamentary words; and if it be proved by said witnesses, that the testator was of sound mind and memory, and not under any restraint, and called upon some persons present, at the time the testamentary words were spoken, to bear testimony to said disposition as his will."

It is said that in five particulars, as shown by said testimony of the attending witnesses, the law regarding verbal wills was not complied with:

1.  It was not made during the testator's last illness.

2.  There was no *animus testandi,* or intention that the words spoken should operate as a testamentary disposition of property.

3.  There was no *rogatic testium,* or calling upon persons present to bear testimony to such disposition as a will.

4.  The will is invalid because it attempts to dispose of both real and personal property.

5.  The attesting witnesses were not disinterested.

As to the first three objections, we dismiss them with the suggestion that the testimony of the attesting witnesses, which we have carefully read and considered, ended, though not strongly, to sustain the will, and should have been submitted to the jury, unless, for some other reason, verdict was properly directed.

As to the fourth proposition, we find the authorities do not sustain it.

In at least one case in this state a verbal will disposing of both real estate and personal property, was sustained as to the personal property, without reference to the question raised here. *Skinner* v. *Blackburn,* 4 C. C., 325.

The Supreme Court of Wisconsin, in the case of *Davis, Will,* 103 Wis., 455, held that under the statute of that state a nuncupative will is inoperative to transfer title to real estate, but say (page 457) "But this does not prevent such will from being effectual as to the personal property.  *McLeod* v. *Dill,* 9 Fla., 451."

In the case of *Sadler* v. *Sadler,* 60 Miss., 251, the verbal will under consideration attempted to pass both real and personal property.  The probate of the will was demurred to, the first ground of demurrer being "because it assumed to convey real estate by nuncupation, and the court said that said demurrer was well taken, but went only to so much of the alleged will as undertakes to pass the realty."

See also *Mulligan* v. *Leonard,* 46 Iowa, 692, and *Offutt* v. *Offutt,* 3 B. Mon. (Ky.), 162.

The fifth objection to the will—that the attesting witnesses were not disinterested—has given us more trouble..

The law says that a verbal will shall be reduced to writing and subscribed by two competent, disinterested witnesses.  The will itself and the testimony of the two witnesses to it, as taken in the probate court and read in the common pleas court, dis-

closes that the testator attempted to devise certain real estate to said witnesses. The probate judge certifies that before giving their testimony: "On explanation, said Isabella Mead and Lucy Douglass, being mentioned in the verbal declaration of the testator, and benefited by having a devise made to them of a house and lot, voluntarily, and in open court, renounce all interest in the will, without prejudice to any claims that they might have against the estate, and thereby become competent witnesses."

That the probate judge was in error as to the effect of this attempted renunciation, is settled by the case of *Vrooman* v. *Powers,* 47 O. S., 191.

That the witness as a matter of law, had no actual beneficial interest under the will, by reason of the attempted devise of realty to them, is settled by the statute itself, 5991, for the law provides that only personalty shall pass under the verbal will.

The presumption is that these witnesses knew the law and therefore knew that the will was ineffectual to benefit them; in other words, they are presumed to have known at the time the testator was speaking to them, that they could not by any possibility receive from him the real estate which he said he gave them. This presumption is probably very slight, in this case; a consideration of it, however, leads up to the proposition urged with great force by defendants in error, that if the witnesses believe that they would be benefitted by the will, then they were not disinterested, within the meaning of the statute.

We do not attempt to decide this proposition, nor is it necessary to a determination of these proceedings in error. The record discloses no evidence as to the belief of the witnesses on this subject; the presumption that they knew the law was in nowise overborne, hence the trial judge was in error in deciding, if he did, that the witnesses were not disinterested and the will for that reason invalid. All the claims urged by defendants in error in support of the judgment based upon a consideration of the testimony of the attesting witnesses as certified by the probate court, appearing to us untenable, it seems that the trial judge was not warranted in directing a verdict, and for error in so doing, the judgment is reversed.