MARY E. PERKINS, *Plaintiff in Error*, v. MRS. C. O'DONALD AND MR. C. O'DONALD, HER HUSBAND, *Defendants in Error.*

Opinion filed May 21, 1919.

Petition for Rehearing denied June 26, 1919.

1. A gift clearly expressed in a will should not be cut down by ambiguous expressions in a codicil.

2. The reformation of written instruments is the subject of equity jurisdiction exclusively.

3. When the subject of a devise is so described that the description is equally applicable to two or more things the ambiguity which thus arises may be explained by parol evi-

dence that it may be ascertained which of the two or more things the testator intended to devise.

4.  Where the subject of a devise is accurately described, the operation of a devise will not be extended beyond its terms, nor will extrinsic evidence be received for the purpose of showing that something different from the thing described was intended to be devised.

5.  Where there is a certain description of a thing devised in a will followed by words which are intended to amplify or make clearer the description already given, and it is discovered that no such thing exists to which the description in its entirety is applicable, so much of the description as is false or erroneous may be eliminated and the devise will not fail if what is left of the description is applicable to the subject.

6.  In the construction of a will the intention of the testator as therein expressed shall prevail over all other considerations if consistent with the principles of law.

7.  A claim of title to the East half of Lot One in Block Twenty-one is not supported by a devise to the claimant of the "East half of Lot One, Block Twenty-two, with the house thereon, * * * to have and to hold the *said described* house and lot with its appurtenances." Nor will parol evidence be received to show that the testratrix did not own the lot described but did own the lot claimed and none other in that portion of the town where the two lots were located.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Judgment reversed.

*J. L. Doggett, W. E. Kay* and *Henry C. Clark,* for Plaintiff in Error;

*Cockrell & Cockrell* and *W. T. McCaffrey,* for Defendants in Error.

ELLIS, J.—Mrs. C. O'Donald and her husband, C. O'Donald, sued Mary E. Perkins in an action of ejectment to recover possession of the East half of Lot One (1) in Block Twenty-one (21) North Pablo Beach, Duval county, Florida. There was a verdict and judgment for the plaintiffs, and the defendant took a writ of error.

The plaintiff, Mrs. O'Donald, claimed title under the last will and testament of Emily E. Marshall. The defendant, Mary T. Perkins, claimed the right of possession as lessee under other devisees of Emily E. Marshall. The plaintiff offered in evidence the probated will and codicil of Mrs. Marshall. To the introduction in evidence of this document the defendant objected upon the grounds that it did not appear that either the will or codicil had any bearing upon the issues of the case; that there was nothing to show that either the will or codicil related in any way to the lot described in the declaration; that the will was incompetent to prove title in the plaintiff because the property described in the will and devised to the plaintiff is entirely a different piece of property from that described in and claimed by the declaration, and that no foundation had been laid to "connect up the property devised by the will with the property claimed in the declaration."

This objection was overruled by the Circuit Judge and the will was admitted in evidence. That ruling constitutes the basis of the first assignment of error argued by counsel for the plaintiff in error.

It is unnecessary to quote in full the will as it appears in the records. It, with the codicil and proofs and certificates attached, is a lengthy document, many of the provisions of which in no wise bear upon the issues involved here. The document begins with the usual declaration that the testator is of "sound and disposing mind and memory" and then recites that, being desirous of settling her worldly affairs and "directing how the estates with which it has pleased God" to bless her shall be disposed of after her death, she made, published and declared the document to be her last will and testament, revoking and making void all former wills made by her. In the first item she directs that all her just debts be paid except certain mortgages with regard to which she makes certain directions. In item two she disposed of certain real property in Jacksonville. The third item is the one specifically under which the plaintiff, Mrs. O'Donald claims. We quote it here in full: "Item 3: I do give, devise and bequeath unto Mrs. C. O'Donald, of Pablo Beach, Florida, the east half of Lot 1, Block Twenty-two (22), with the house thereon at North Pablo Beach, Florida, to have and to hold the said described house and lot with its appurtenances and belongings unto the said Mrs. C. O'Donald, her heirs and assigns, in fee simple absolute." In item four she devised to Miss Taylor the west half of the same lot. In item five devised the "rest and residue" of her estate, "both real and personal and mixed wheresoever situate" to certain persons in trust for the purposes set forth in the will. Under the persons claiming title under this last clause the defendant claims the right of possession to the lot involved in this litigation.

The will was dated February 17, 1913. On the 26th day of December following Mrs. Marshall made a codicil in which she recited that,. having theretofore during the month of February, 1913, made a will, and being "desirous of altering and changing the said will," she made the codicil, the first three paragraphs of which are as follows:

"Two-thirds (2/3) of all my property, real, personal and mixed, I give outright to my nephew Winfred John Foss, to do with as he sees fit, having implicit confidence in his judgment and discretion and knowing that he will do with this property as is best:

"As to the remaining one-third (1/3) of all my property, any specific devises or bequests of property not included in the property left in trust by my said Will, I do hereby affirm, and desire and ordain that they be carried out as set forth in said Will.

"But with the exception of any such specific devises or bequests, I desire and ordain that any and all of the remainder of this one-third (1/3) of my property be left in trust to the said Trustees of my Will to be disposed of in the following manner."

By the will as declared in February, 1913, Mrs. Marshall directed that two lots should be given to three persons, *viz:* Ada Patterson, Mrs. O'Donald and Miss Taylor. Ada Patterson to have the house and lot in Jacksonvill and Mrs. O'Donald and Miss Taylor the lot in North Pablo Beach, one taking the east half and the other the west half of the lot. The remainder of her estate Mrs. Marshall devised in trust to C. C. Bettes and Winfred J. Foss for the purposes named in the will. Under this clause the trustees were directed to care for the property,

collect the rents, pay the taxes and other bills, and during the first year to pay $500.00 to Rev. P. W. Fauntleroy and all the net rents and profits to be divided between W. J. Foss in trust for W. L. Foss, Merle Wyman, Marshall Wyman, Carrie Gay, the children of Henry Chirstenot, Emma Hough and Maud Brill Chew, each to have one-tenth except W. J. Foss, who was to have in trust three-tenths, and Maud Brill Chew, who was to take two-tenths. At the end of each year thereafter during the life of the trust the net rents and profits were to be distributed in the same manner. The will directed that at the end of ten years the trustees should sell all of the estate and the cash and convertible securities received therefor after the payment of all charges should be distributed in "the following proportion to the following persons: "Mrs. O'Donald to receive $1000.00, Miss Taylor $1000.00. Out of the balance then remaining W. L. Foss was to receive three-tenths, Maud Brill Chew two-tenths and the others one-tenth each. In the 26th of December, 1913, Mrs. Marshall executed the codicil in wihch she devised to Winfred John Foss two-thirds of all her property, real, personal and mixed, "to do with as he sees fit," having confidence in his judgment and discretion and knowing that he would do with the property as is best. The codicil then proceeds to deal with the remaining one-third of all the property. But in this connection the testatrix again refers to the specific devises or bequests of property not included in the property left in trust by the "said will" and affirmed such specific devices and desired and ordainned "that they be carried out as set forth in said will."

It appears that this language indicates an intention to segregate from the bulk of her estate the two lots

which were the subject of the three specific devises and to deal with the remainder, two-thirds of which she directed to go to W. J. Foss, and the remaining one-third in trust with the changes designated in the codicil.

We were for a time doubtful of the effect of the codicil upon the specific devises and requested counsel for briefs upon that point. A more careful consideration of the language of the codicil and the will taken as one instrument has led us to the conclusion that the specific devises were not annulled or revoked by the codicil. It appears to have been the testatrix intention by the codicil to deal with the property left in trust by the provisions of the will as at first written.

It is an established rule that a gift once clearly expressed in a will shall not be cut down by ambiguous expressions contained in a codicil. 1 Jarmon on Wills (6th ed.) 1002. Although the gift to W. J. Foss in the codicil of two-thirds of all the "property real, personal and mixed" seems to revoke the special devises of the two lots in Jacksonville and North Pablo Beach at least in part, the language in another part of the codicil is as follows: "Any specific devises or bequests of property not included in the property left in trust by my said will, I do hereby affirm and desire and ordain that they be carried out as set forth in said will," indicates that the gift to W. J. Foss was not to include any property specifically devised. If the codicil then is ambiguous in this particular, the gifts clearly expressed in the will would not be cut down by the codicil under the above rule. See 1 Jarmon on Wills (6th ed). 180.

A more serious question is raised by the objection of defendants to the introduction in evidence of the will

and codicil upon the ground that the lot described in the will as devised to the plaintiff is a different piece of property from that described in the declaration.

According to a map of Pablo Beach contained in the record, Lot 1, Block 22, North Pablo Beach, is located on Dickerson Avenue, while Lot 1, Block 21, North Pablo Beach, is located on Willard Avenue, one street north. Lot 1, Block 22, North Pablo Beach is the lot described in the will. The plaintiff undertook to show by evidence introduced at the trial that Mrs. Marshall did not own Lot 1, Block 22, North Pablo Beach, or any other property in North Pablo Beach except Lot 1, Block 21, although it appeared that she owned Lots 3, 4 and 5, Block 22, South Pablo Beach. Pablo Beach is the name of the town. The north section of the town is that portion of it lying north of the railroad, or a certain row of lots, the other section of the town is that portion lying to the south of the railroad, or row of lots, and the lots and blocks in each sub-division of the town in many cases are designated by the same numbers, one being designated from the other by the words "north" and "south." Now there is no ambiguity whatsoever in the language contained in Item 3 of the will, either as to the devisee, the property described or the estate devised. It is only when facts *aliunde* the will are considered that any ambiguity exists. If Mrs. Marshall had owned at the time of her death Lot 1, Block 22, North Pablo Beach, there would be no question that it would have passed under the will to Mrs. O'Donald, assuming that our Statute of Wills, Section 2271, General Statutes, 1906, includes specific as well as general devises. And this is true even though Mrs. Marshall had also owned Lot 1, Block 21, in the same section of the town. If she had owned both lots at

the time she made her will and afterwards sold the one described in item three and retained the other, would a question have arisen in that case as to whether the devise to Mrs O'Donald had failed? Even in such case, whether the English Statute of 34 and 35 Hen. VIII, or Section 2271, General Statutes of Florida, 1906, applied the subsequent sale of the lot devised would have shown an intention to annul the devise so that Mrs. O'Donald would have taken nothing under that clause of the will. If the E. ½ of Lot 1, Block 22, had been acquired by the testatrix after she made her will Mrs. O'Donald would have taken that lot, assuming that Section 2271, General Statutes of Florida, 1906, applies. But in that case would Miss Taylor, to whom was devised the W. ½ of Lot 1, Block 22, have taken the west half of some other lot owned by the testatrix in North Pablo Beach if she did not at the time of her death own the half of the lot devised to Miss Taylor?

Now there are no two lots in North Pablo Beach that answer to the description in the will by number of lot and block, although there is another lot corresponding in number, but in a different block on the west and east halves of which houses are located, so that by dividing the lot as directed in the will into the east and west halves, each half would have a house located thereon and such lot was owned by Mrs. Marshall at the time of her death, and at the time of making her will. This other lot is the one the east half of which is claimed by the plaintiff.

The evidence offered to which the defendants objected tends to show that the lot described in the will belonged to another person than Mr. Marshall, and that she had

never owned the same, but that she had exercised acts of ownership over the lot described in the declaration.

The ambiguity then which exists in the third item of the will grows out of extrinsic evidence and relates to the subject of the devise.

The reformation of written instruments is the subject of equity jurisdiction alone, but this is a common law action and the plaintiff's counsel admit that there is no effort to reform the will. The contention being that as an ambiguity exists in the will as to the subject of the devise, which ambiguity arises from extrinsic evidence the same nature and character of evidence which gives rise to the ambiguity is admissible to explain it. The question, therefore, is one of construction they say, and not reformation. Defendant's counsel, on the other hand, contend that the plaintiff in reality seeks to reform the will under the guise of construction.

If there is any ambiguity in the third clause of the will relating to the subject of the devise, it is not what is called a patent ambiguity. The description of the lot is perfect. Nor is the ambiguity of that character which arises when undertaking to apply the will to the *thing* devised it is discovered that there are *two* subjects or things which answer the description in the will, such would be a latent ambiguity. In the latter case the au- thorities, both English and American, agree that parol evidence may be received to explain the ambiguity, that is to say, to ascertain which of the two things it was the intention of the testator to devise.

The instant case is unlike that, however, in that there are not two lots which answer to the description in the third items or the will. It is simply a case of where the

testatrix, through mistake or design, described a lot which she did not own. A case in which resort must be had to extrinsic evidence to show the mistake.

Mr. Pomeroy, in his work on Equity Jurisprudence, says: "Equity has a very narrow jurisdiction to correct mistakes in wills, but only where the error appears upon the face of the will itself so that both the mistake and the correction can be asecrtained and supplied by the context from a plain interpretation of the terms of the instrument as it stands. A resort to extrinsic evidence is never permitted either to show a mistake or to ascertain the correction." 2 Pomeroy's Equity Jurisprudence (4th ed.) 1790.

A note appended to that text, however, states that the text needs a fuller exxplanation. It is then pointed out that while there is no jurisprudence in equity to reform wills analogous to that for the reformation of conveyances, agreements and the like, the power does exist to correct mistakes in wills as a part of the more general function of construction and interpretation, and may be exercised, if at all, in administration suits, or in any other suits wherein the rights of parties under the will are adjudicated. The power exists, however, in very narrow limits, it is stated. "The only possible modes of correcting mistakes in wills are by transposing, rejecting or supplying words or clauses; and the fundamental principle is settled, *that both the error and the correction of it must appear with certainty on the face of the will itself,* and extrinsic evidence can never be resorted to for that purpose."

Our investigation of this most troublesome question has merely proven that the decisions are in irreconcilable conflict and probably grow out of the desire on the one

hand to remain unswervingly faithful to principle, and upon the other the laudable desire to give effect to what in the opinions of the judges was the probable intention of the testator after ascertaining the facts known to him which they suppose may have reasonably influenced him in the disposition of his property.  The difficulty with this latter course is that after much evidence has been taken with the usual contradictions, uncertainties, ambiguities, and other inadequacies, the result cannot be more than probability, surmise, conjecture, not to say guess, that the real truth as the testator knew it influenced him to declare in his will the intention as the court finds ito be.  But "conjecture," said Mr. Justice LEE in Wootten v. Redd's Executors, 12 Gratt. (Va.) 196, "cannot be permitted to usurp the place of judicial conclusion nor to supply what the testator has failed sufficiently to indicate.  The *law* has provided a definite successor to the estate in the absence of a testamentary disposition, and the heir is not to be disinherited unless by express words or necessary implications."  Jarmon on Wills, Wigram on Ex. Ev. Prop., and Greenleaf on Evidence are cited in support of the doctrine.  The intention of the testator must be gathered from the words of his will.  The enquiry is not what the testator meant to express, but what the *words* which he has used do express.  When those words create a patent ambiguity, that is to say, if the will is uncertain or unintelligible upon its face, it is as if no will had been made.  For it should not be forgotten that no verbal or nuncupative will is good within the statute of frauds except under special circumstances.  "It is a well settled rule that seems not to stand in need of much proof or illustration, for it runs through all the books, from Cheney's Case (5 Co. 68) down to this day (1814), that parol evidence cannot be

46—Vol. 77.

admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator, except in two specified cases: 1, Where there is a latent ambiguity, arising *dehors* the will, as to the person or subject meant to be described; and, 2, To rebut a resulting trust. All the cases profess to proceed on one or the other of those grounds." Mann v. Executors of Mann, 1 Johnson's Ch. (N. Y.) *231. A latent ambiguity arises when it is sought to apply the words of the will to the subject or object of the devise or bequest, and it is found that the *words* of the *will* apply to and fit without ambiguity indifferently to each of several things or persons. In such cases evidence will be received to prove which of the subjects or persons so described was intended by the testator. To this end the court may hear evidence of the circumstances, situation and surroundings of the testator when the will was made and the state and description of his property. The purpose being that the court may be placed in the testator's position, that it may be able to understand and apply the *language* of the will and give effect to it so far as the intention of the testator can be determined. Thus when a latent ambiguity is disclosed by matter *dehors* the will it may be explained or removed by extrinsic evidence.

But it "has been established as what must now (1873) by reason of its antiquity, and of the observance which has been paid to it in many subsequent cases, be regarded as an axiom, that when a devise is made in terms which describe and apply specifically to a definite subject, the operation of that devise cannot be extended beyond the *very terms* in which it is expressed nor can extrinsic evidence be resorted to for the purpose of showing that *something different* from the description was intended

by the testator." Whitfield v. Langdale, L. R. 1 Chan. Div. 61.

In this country there have been apparent departures from this rule by many courts of undoubted eminence and respectability, notably the case of Batch v. White, — P 117 U. S. 210, 6 Sup. Ct. Rep. 617, 710, opinion by Mr. Justice BRADLEY (1885) in which it is stated that there is another class of latent ambiguities, namely, "when the devisee or the property devised is imperfectly, or in some respects erroneously, described so as to leave it doubtful what person or property is meant." In that case the property in controversy was lot three in square four hunderd and six in the city of Washington. The plaintiff claimed under a devise of "lot numbered six in square four hundred and three, together with the improvements thereon erected and the appurtenances thereto belonging." Extrinsic evidence was offered by the plaintiff who insisted that it was admissible for the purpose of removing a latent ambiguity. Applying the doctrine of *"Falsa demonstratio non nocet,"* it was held by a divided court, five justices to four, that in the particular case the *will itself,* atfer striking out the false description, sufficiently identified the subject of the gift. Because, said the learned judges, after "striking out the misleading words six and three" the devise was in substance: "I bequeath and give to my beloved brother Henry Walker forever, lot number —— in square four hundred and —together with the improvements thereon erected and appurtenances thereto belonging—being a lot which belongs to me and not specifically devised to any other person in this my will." That description, said the court, identified the lot the testator had in mind. It was identified by ownership, by improvements, by being the only lot owned by the testator which he did not otherwise dis-

pose of, and by its being in a square the number of which commenced with four hundred. The dissenting opinion points out with clearness the point of difference which prevailed among the justices of that court. The line is clearly drawn. The evidence, said Mr. Justice WOOD, speaking for the minority, "does not tend to show a latent ambiguity." The ground upon which the plaintiff's claim rested was that the testator did not own the lot described in the devise.

Other courts seemingly have followed the views expressed by the majority in Patch v. White, *supra*, while upon the other hand many others have not ventured so near to the forbidden ground where wills are reformed and new ones made for deceased persons.

It is not my purpose to attempt an analysis of the many cases cited by counsel for the parties and the many other cases to which reference may be made upon this question. The work would be productive of no benefit. The cases are as we have said in apparent hopeless conflict, but they are all in substantial harmony concerning the elementary principles which are applicable in such cases. The difficulty lies in the application of these principles, most frequently in undertaking to apply the maxim *"Falsa demonstratio no nocet."* When there is a certain description of a thing devised, followed by words which are intended to amplify or make clearer the description already given, and it is discovered that no such thing exists to which the description in its entirety is applicable, so much of the description as is false or erroneous may be eliminated and the devise will not fail if what is left of the description is applicable to the subject. This we take to be the true meaning or significance of the maxim.

In the case at bar there are no two objects, no two subjects. The description of the lot is perfect, it fits a lot in the portion of the town designated by the word North. The words "with the house thereon" do not render the description uncertain, even if the dividing line between the east and west half of Lot 1, Block 22, should run through a house located on the lot.

In the Albury case, 63 Fla. 329, 58 South. Rep. 190, the description of the land was ineffectual for any purpose. There was no such land. Therefore, eliminating the description, the devise would have been substantially as follows: "Unto Benjamin Albury and Andrew J. Kemp, I give and bequeath in fee simple all that certain lot of [my] land on Long Key, Monroe county Florida," etc. But in the case at bar there is a lot of land in North Pablo Beach which answers to the description in the will. To change that description to fit *some other* lot is to reform the will. We cite here a few of the many cases which we think correctly support this conclusion. Lomax v. Lomax, 218 Ill. 629, 75 N. E. Rep. 1076, 6 L. R. A. (N. S.) 942, and Note in which many cases are collected; Kurtz v. Hibner, 55 Ill. 514; Huffman v. Young, 170 Ill. 290, 49 N. E. Rep. 570; Wooton v. Redd's Executors, *supra;* Ehrman v. Hoskins, 67 Miss. 192, 6 South. Rep. 776; Horwood v. Griffith, 4 DeGex M. & G. *700; McGovern v. McGovern, 75 Minn. 314, 77 N. W. Rep. 970; Bingel v. Volz, 142 Ill. 214, 31 N. E. Rep. 13, 16 L. R. A. 321; Mann v. Mann, 14 Johns (N. Y.) 1; Sturgis v. Work, 122 Ind. 134, 22 N. E. Rep. 996; Box v. Barrett, L. R. 3 Eq. Cas. 244; Tucker v. Seaman's Aid Society, 7 Met. (Mass.) 188; Hanner v. Moulton, 23 Fed. Rep. 5; Sherwood v. Sherwood, 45 Wis. 357; Winkley v. Kaine, 32 N. H. 268.

It would be useless to cite more cases in support of the view we have of the law as applied to this case. We are of the opinion that to apply the doctrine contended for by defendant in error would be in effect to reform the will of Mrs. Marshall, to supply what we might suppose to have been her intention for that which is expressed by the language of the will, to import into the will an intention not there expressed, to make the evidence create the gift instead of diercting it, and by such so-called construction set aside the long established principle embodied in the laws of the land that a nuncupative will is ineffectual to pass title to real estate. McLeod v. Dell, 9 Fla. 451; Brown v. Avery, 63 Fla. 355, 58 South. Rep. 34.

We think the principle announced in Lines v. Darden, 5 Fla. 51, and re-affirmed many times by this court is applicable to the case, *viz:* "In the construction of a will the intention of the testator, *as therein expressed,* shall prevail over all other considerations if consistent with the principles of law. To this first and great rule in the exposition of wills all others must bend."

The admission of the will in evidence was error as the devise to Mrs. O'Donald did not describe the land in controversy and the evidence offered by the plaintiff below to explain the so-called latent ambiguity was inadmissible to show an intention on the part of the testator to devise a lot of land different from that definitely described.

So the judgment of the court below is reversed.

All concur.