W. SHARP, Judge.
John Kernkamp, the personal representative of his mother’s estate, appeals from an order requiring him to distribute estate assets to his mother’s niece, pursuant to a codicil to his mother’s will. We find that the codicil is ambiguous and remand for an evi-dentiary hearing to determine the testator’s intent.
In December 1990, John’s mother, Mrs. Charlotte Luly, executed her last will and testament. Mrs. Luly disposed of her jewelry by separate list and left the remainder of her estate to John. Mrs. Luly named several contingent successor beneficiaries, the last of whom was her niece, Lydia Barbara Bolt-house.
In March, 1994, Mrs. Luly executed a codicil to her will. The codicil amended Item I of the will regarding payment of death, funeral and testamentary expenses:
A. I amend Item I of my will, so as to make that part of my will read as follows:
I hereby order and direct my Personal Representative pay all of my legally en*656forceable debts (except debts secured by-mortgages or other security instruments), the expenses of my last illness and cremation and funeral, all administration expenses of my estate, and all estate, inheritance, and other death taxes assessed or imposed with respect to property comprising my gross estate for federal estate tax purposes, whether or not passing under this will, together with any related interest and penalties, from my Smith Barney Shearson account with any remaining balance to be paid to my niece, LYDIA BARBARA BOLTHOUSE, social security number 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.
All provisions of the original will not in conflict with the codicil were affirmed and republished.
In 1995, Mrs. Luly passed away and John was appointed personal representative of her estate. Excluding her homestead, Mrs. Luly’s estate amounted to $399,107.17. Of this amount, close to $270,000 were assets held by Smith Barney:
Money Funds $ 33,234.28
Stocks 1,111.60
Bonds 234,672.95
The money funds, stocks and bonds were listed on one “Preferred Client FMA Statement” from Smith Barney under account number 434-12560-16001. The statement also listed a checking account, account number 1810253965, with the Boston Safe Deposit and Trust Company.
Lydia filed a petition to compel John to distribute to her the assets remaining in the Smith Barney account after the payment of estate expenses. John asserted that Lydia was entitled only to the balance left in the money market account after payment of debts and expenses, and not the stocks and bonds.
After a hearing, the trial court concluded that the language in the codicil was clear and unambiguous, and resort to parol or extrinsic evidence was not necessary. It held that Mrs. Luly intended that her Smith Barney account be used to satisfy all estate expenses and that any remaining balance would be paid to her niece. The court determined that Mrs. Luly had only one Smith Barney account, number 434-12560-16001, which included the stocks and bonds, and that the account with the Boston Safe Deposit & Trust Company was not part of the Smith Barney account. The court ordered that the net stocks and bonds after payment of debts and expenses, totalling close to $236,000, be distributed to Lydia and that the money funds be distributed to John.
Where the terms of an instrument are clear and unambiguous, there is no need for the court to engage in a construction of the instrument. First National Bank of Florida v. Moffett, 479 So.2d 312 (Fla. 5th DCA 1985). However, where there is ambiguity or uncertainty arising from the language used, construction of the instrument is necessary. First National Bank of Florida. A latent ambiguity arises when “it is sought to apply the words of the will to the subject of the devise or bequest, and it is found that the words of the will apply to and fit without ambiguity indifferently to each of several things or persons.” Perkins v. O’Donald, 77 Fla. 710, 82 So. 401 (1919). See also First National Bank of Florida (language of trust document was ambiguous because it could be reasonably read in two ways). In cases of a latent ambiguity, evidence will be received to prove which of the persons or subjects so described was intended by the testator. To this end, the court may hear evidence of the circumstances, situation and surroundings of the testator when the will was made and the state and description of his property. This enables the court to place itself as best it can in the testator’s shoes, in order to understand and apply the language of the will to give effect to the intention of the testator. Perkins, 82 So. at 405.
Here Mrs. Luly directed her personal representative to pay her debts and administration expenses in Item I of her last will and testament. In Item III, she left the residue of her estate to her son John. Mrs. Luly named several contingent beneficiaries, the last being her niece. The codicil to her will only amended Item I. The codicil did not change the residuary clause of the will and did not change the contingent beneficiaries.
Unfortunately, the codicil did not identify the Smith Barney account by account num*657ber nor specify the assets in the account. Other terms commonly used in wills such as “savings account” and “personal property” have meanings which vary with the intent of the testator. See In re Estate of Walker, 609 So.2d 623 (Fla. 4th DCA), rev. denied, 613 So.2d 12 (Fla.1992); Gadoury v. Caldwell, 425 So.2d 220 (Fla. 2d DCA 1983).
We conclude that the reference to the Smith Barney account in the testatrix’s codicil is ambiguous. Apparently the trial court relied on the Preferred Client FMA Statement sent to Mrs. Luly by Smith Barney. However, this statement could support the claim that all the various assets, (money funds, stocks and bonds) were under the Smith Barney account “umbrella.” Page one of the statement lists and totals the money funds, accrued money fund dividends, stocks, and bonds as the “Account Value.” Page two identifies the money funds as the “Smith Barney Money Funds Inc. Cash Portfolio Cl A.”
However, the statement also lists a checking account with the Boston Safe Deposit & Trust Company. This account has a different account number than the money funds statement. If this account represents something other than simply the checking account aspect of the money market funds (which is not entirely clear from the statement), then perhaps the money funds were not part of the Smith Barney holdings. Or, if it is the checking account aspect of the money funds held by Smith Barney, then it was likely intended to be included in the codicil, perhaps exclusively. There is some logic to John’s argument that the codicil refers only to the money markeVchecking account of the Smith Barney statement because it would be the most convenient way to pay estate expenses and not incur additional taxes and fees, and there likely would be a “balance” remaining after payment of estate expenses.
Construing the Smith Barney account as including all of the assets covered in its statement, or even just the stocks and bonds dramatically alters the testamentary distribution plan of Mrs. Luly’s will. Since there is more than one reasonable interpretation of the reference to the Smith Barney account in the codicil, the cause is remanded for eonsid-eration of extrinsic evidence to determine Mrs. Luly’s intent. See Barley v. Albertini, 694 So.2d 843 (Fla. 5th DCA 1997) (since will contained inconsistent provisions with respect to payment of debts, expenses, taxes and costs of administration, remand was required for consideration of extrinsic evidence to determine the testator’s intent).
REVERSED and REMANDED.
COBB, J., and ORFINGER, M., Senior Judge, concur.