MARY ANN ALBURY et al., Appellants, v. BENJAMIN AL-
BURY AND ANDREW J. KEMP, Appellees.
Original Bill.

AND

MARY ANN ALBURY, et al., Appellants, v. BENJAMIN AL-
BURY AND ANDREW KEMP, Appellees.
Cross Bill.

Where the description of real estate devised by a will is faulty
in part and describes no property which was owned by the
testatrix, and the remaining part of the description, taken
in connection with the circumstances existing when the will
was made, is sufficient to indicate the real estate intended
to be devised, the faulty part of the description will be
rejected, and the intention of the testatrix will be enforced.

Appealed from the Circuit Court for Monroe County.

The facts in the case are stated in the opinion of the
court.

W. Hunt Harris, for Appellants;

John G. Sawyer and Wall & McKay, for Appellees.

HOCKER, J.—Mary Ann Albury, Margaret E. Albury,
Edward B. Albury, Henry W. Albury, Robert Lee Albury,
Charles B. Albury, Mary Albury Loundres, Clara Albury,
Ruth Albury and George W. Albury, minor, by his next
friend, Margaret E. Albury, of the county of Monroe and
State of Florida, and Patrick Larkin of the State of New
York, filed their bill to quiet title against Benjamin Al-
bury and Andrew J. Kemp, of the county of Monroe and
State of Florida. The above named defendants, Ben-
jamin Albury and Andrew J. Kemp, also filed their cross-
bill against the complainants in the original bill to quiet
their title to the same land claimed by the complainants

in the original bill. The purpose of these suits was to obtain a construction of two clauses of the last will of Rosana Albury, deceased, under which the respective parties claim certain land located on Long Key in Monroe County, Florida. The first of the two clauses to be construed is as follows:

"Twelfth: Unto Benjamin Albury and Andrew J. Kemp, I give and bequeath, in fee sample, all that certain lot of land on Long Key, Monroe county, Florida, described as Lot number Two (2), Sections four and five (4 and 5), Township Sixty-five (65), South of Range Thirty-six (36), containing two hundred and thirty-six acres, more or less, to share and share alike."

The second clause involved is as follows:

"The rest and residue of my property, real, personal or mixed, of which I may die seized, or possessed to which I shall be entitled at the time of my decase, I give, devise and bequeath unto my brother, Patrick Larkin, my sister, Mary Ann Albury, and my deceased husband's brother, Gilbert Albury, share and share alike."

The complainants in the original claim under the last clause above cited as residuary legates on the ground that the attempted devise to Benjamin Albury and Andrew J. Kemp of the Long Key land is void for uncertainty of description, and the latter in their cross-bill deny this contention, and claim that the erroneous part of the description being rejected, there is sufficient description to show what land was intended to be devised.

The true description of the land owned by the testatrix on Long Key is as follows: Lot 3 in Sec. 33, Tp. 64 South of Range 35 East, and lot 2 of Sec. 4, Tp. 65 South of Range 35 East, and lot one (1), Sec. 5, Tp. 65 South of Range 35 East, and lot 3 of Sec. 4, Tp. 65, South of

Range 35 East.  These lots form a contiguous body of land, and it appears that this was the only land owned by the testatrix on Long Key.  In all they contained about 227 acres by the Government Survey.  The attempted description of this lot of land in the quoted clause of the will by the Government designation of lots, Sections, Townships and Range, is altogether faulty.  There is no such land on Long Key, or elsewhere, so far as is shown by the record.

When the two cases came on for final hearing the Circuit Judge, holding that "the intent of the testator is the cardinal principle in the construction of wills, and where it can be discovered it must prevail, if not contrary to some positive rule of law," decreed that it was the intention of the testatrix to give to Benjamin Albury and Andrew J Kemp what land she supposed she owned on Long Key, leaving out of consideration the inapplicable description as lot 2, Sections 4-5, Tp. 65, S. R. 36.  No part of Long Key is in Range 36, but it is altogether in Range 35.  The Circuit Judge dismissed the original bill filed by Mary Ann Albury *et al.*, with costs and granted the prayer of the cross-bill enjoining the defendants therein from asserting any claim of interest in said land as against Benjamin Albury and Andrew J. Kemp.  Complainants in the original bill appealed from this decree.

There are quite a number of assignments of error, the most of them based on the admission and rejection of evidence, which do not control the decision of the real point in controversy.  That point is involved in the first part of the 12th clause of the will, which is as follows: "Twelfth:  Unto Benjamin Albury and Andrew J. Kemp, I give and bequeath, in fee simple, *all that certain lot of land on Long Key, Monroe county, Florida,* described as lot number Two (2), Sections four and five (4 and 5),

Township Sixty-five (65), South of Range Thirty-six (36), containing two hundred and thirty-six acres, more or less, to share and share alike." It is the contention of appellants, as we have said, that this description is void for uncertainty, and that they are the owners of the four lots on Long Key as residuary legatees under the will.

We have carefully examined all the authorities cited in support of this contention, and we find ourselves unable to agree with the appellants. It is perfectly true that the attempted description of land on Long Key by lot, section, township and range is entirely ineffective for any purpose. An examination of the Government maps and survey of Long Key, which are in evidence, as well as the testimony of the surveyor, all show there is no such described land on Long Key. It is also proven and admitted that the testatrix did own at the time of her death four lots on Long Key, aggregating about 227 acres, all forming a contiguous body of land. The rules of construction applicable to such a situation seems to us to be plain. The first rule is that in the construction of a will the intent of the testator as shown by the language of the will is to control. All courts adhere to this rule. "The intention of the testator is the polar star to guide in the construction of a will, which intention does not depend on any particular clause standing by itself, but is to be gathered from the whole will taken together, and where the testator's intention is manifest it must prevail, if it is not contrary to some positive or settled rule of law." Russ v. Russ, 9 Fla. 105, text 129. See also Lines v. Darden, 5 Fla. 51. There is no use to multiply authorities on this proposition. The case of Patch v. White, 117 U. S. 210, 6 Sup. Ct. Rep. 617, 710, the opinion written by Judge BRADLEY is luminous upon the questions presented in the instant case. It is held in substance that

parol evidence as to the circumstances and conditions under which a will was made may be resorted to, to explain a latent ambiguity in the description in the will, of persons or things; that where a latent ambiguity is only desclosed by extrinsic evidence, it may be removed by extrinsic evidence. "Mistakes in the description of legacies like those of of legatees may be rectified by reference to the terms of the gift and evidence of extrinsic circumstances taken together." "A description though false in part may, with reference to extrinsic circumstances, be absolutely certain, or at least sufficiently so to enable a court to identify the subject intended; as where a false description is superadded to one which by itself would have been correct." "In these cases the substance of the subject intended is certain, and if there is but one such substance, the super-added description though false, introduces no ambiguity, and as by the supposition the rejected words are inapplicable to any subject the court does not alter, vary or add to the effect of the will by rejecting them. Wigram on Extrinsic Evidence, 53. Of course when the author speaks of the rejected words as being 'inapplicable to any subject,' he means inapplicable because the subject is not in existence, or does not belong to the testator." There is a strong dissenting opinion in this case in which it is contended there was no ambiguity in the description they had under discussion. But in this dissenting opinion it is stated to be law, that "where there is a sufficient description of premises in a will, a subsequent erroneous addition will not vitiate the description, and we may reject a false demonstration."

In the case of Pate v. Bushong, 161 Ind. 533, 69 N. E. Rep. 291, it is held: "The intention of the testator governs the construction of a will, and to ascertain the intention,

the court may hear evidence of the circumstances, situation and surroundings of the testator when the will was made and the state and description of his property." And further it is held: "A devise of land by a description partly false, as where the wrong section number is given, may be effective if what remains, after rejecting the false, reasonably corresponds with the real estate indicated by extrinsic evidence." See note on this case in 100 Am. St. Rep. 287. We think these cases state correct principles of law for determining the intention of a testator. The Circuit Judge correctly applied them in the construction of the 12th clause of the will, and rejected the false description by lot, sections, township and range—for it was shown that no such land existed—and held that the testatrix intended by the following language that was left, "all that certain lot of land on Long Key, Monroe County, Florida, ————— containing two hundred and thirty-six acres, more or less," to devise all the land she owned on Long Key, which embraced the four lots which have been described, and which formed a contiguous lot or body of land.

The decree appealed from is affirmed.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and COCKRELL, JJ., concur.