C. L. ADAMS, F. CLAUDE ADAMS, R. STANLEY ADAMS, MILDRED ADAMS WALTON and W. H. WALTON, her husband, EULA POWELL ADAMS, and LLOYD SMITH, as Executors under the Last Will and Testament of LAWRENCE S. ADAMS, deceased, EULA POWELL ADAMS, and LLOYD SMITH, as Trustees under the Last Will and Testament of Lawrence S. Adams, deceased, and MAMIE ADAMS SMITH, and CLARENCE L. SMITH, her husband, v. RUBYE WILDER ADAMS and A. N. O'KEEFE, as Executors of and under the Last Will and Testament and Codicils thereto, of Frank Adams, deceased, and RUBYE WILDER ADAMS, individually.

2 So. (2nd) 855
En Banc
Opinion Filed May 23, 1941
Rehearing Denied June 25, 1941

*Milam, McIlvaine & Milam* and *Robert R. Milam,* *Stafford Caldwell* and *C. C. Howell,* for Appellants, and Cross-Appellees;

*Jennings & Watts* and *Olin E. Watts,* for Appellees and Cross-Appellants.,

*Mitchell D. Price* and *Charles W. Zaring,* as *Amici Curiae.*

TERRELL, J.—Frank Adams died in February, 1940, leaving a will dated April 2, 1924, to which there were

five codicils dated January 19, 1932, January 23, 1932, February 6, 1937, May 1, 1937, and July 14, 1937. The will and codicils were admitted to probate February 23, 1940, and letters testamentary were issued to Rubye Wilder Adams and A. N. O'Keeffe. The codicil dated May 1, 1937, devised to the widow one-third of the estate, the portion allotted to her as dower under Section 35 of the Probate Act.

In September, 1938, Frank Adams conveyed in trust to C. S. L'Engle, D. M. Barnett, and the Barnett National Bank of Jacksonville, securities and properties constituting virtually all of his estate. In 1939, the Legislature enacted Chapter 18999, the pertinent part of which is the first proviso of Section 1, as follows:

". . . provided, however, that if a decedent dying either testate or intestate, be survived by his widow and lineal descendants and that none of such lineal descendants are also the lineal descendants of such widow, then such widow shall be limited to dower in the estate of said decedent irrespective of the terms of the will of said decedent, if any, and such dower shall be limited to the portion of the estate of the decedent to which the widow is entitled under the law of descent and distribution, to-wit, a child's part, and in all cases the portion of the widow, whether said dower or such child's part or share under the will, shall be ratably liable with the remainder of the estate for all estate and inheritance taxes and all costs, charges, and expenses of administration. . . ."

The bill of complaint herein was filed by the executors of Frank Adams' estate naming his children as defendants. It recites that Rubye Wilder Adams is the widow of Frank Adams and that she is not the

mother of his children. It recites the execution of the trust deed and alleges that it creates a vested remainder in Rubye Wilder Adams and the Adams children. It pleads the passage of Chapter 18999, asserts its unconstitutionality, and contends that it affects very little of the Frank Adams estate because the trust deed was executed prior to the effective date of the Act and vested most of the estate in the persons named in the will and codicils thereto as remaindermen.

The answer of the Adams children admitted many allegations of the bill of complaint but denied the invalidity of Chapter 18999 or that the trust deed created a vested remainder in Mrs. Adams and the Adams children and withdrew the assets from the estate for administration under the will. On final hearing, the chancellor adjudicated Chapter 18999 to be valid and the trust deed to create a vested remainder in Mrs. Adams and the Adams children. He remanded the cause to the probate court for administration of the estate. The Adams children appealed and the complainants took a cross appeal.

The main appeal turns on the interpretation of the trust deed and the cross appeal turns on the validity of Chapter 18999, Acts of 1939. It is contended that Chapter 18999 contravenes the equal protection clause of the Fourteenth Amendment to the Federal Constitution, and Section 1, Declaration of Rights, Constitution of Florida, in that it is arbitrary and discriminatory as to widows without lineal descendants.

It is quite true that the Act distinguishes between the widow with and the widow without lineal descendants, but is such a discrimination arbitrary and unreasonable? Dower is that portion of the deceased

husband's estate admeasured to the widow for her support and the support of the children. It is not a vested right, a privilege, or an immunity protected by the Constitution. Its roots go deep into the history of the law and some features of it may be observed in every system of jurisprudence known to civilized man. It is one of the earliest elements known to the common law, under which it was one-third of all lands the husband was seized of during coverture. Common law dower has been changed by statute in England and is rarely the same in any two jurisdictions. It has been regulated by statute to meet local conditions and with the view of providing ample support for the widow for such properties as the husband may die possessed of.

Having been accustomed to think of dower in terms of one-third of the husband's estate, it is at first blush somewhat shocking to our traditional concepts to see it reduced to a child's part for the childless widow, but we find no reason to hold that such a change violates any constitutional mandate. Neither can we say that such a classification is not based on a fair and reasonable economy. Since the basis of it is bread for the widow and children, it cannot be said that the needs of the childless widow are the equivalent of those of the widow on whom there are dependent children. There is no sounder basis for classification than economic considerations. The urge to eat is one of the most impelling impulses of the human species; invite us to a feed and we respond one hundred per cent.

We are unfortunately more sensitive to our economics than we are to our vices and virtues.

It is next contended that Chapter 18999 is violative of Section 16, Article III, of the Constitution, in that,

(1) it attempts to amend a present statute by its title only, (2) it embraces more than one subect and matter properly connected therewith, and (3) the title is restrictive and deals with dower only while the body of the Act deals with wills.

The general theory of appellees on this point is that Chapter 18999, by amending Section 35 of the Probate Act also amends by implication other provisions of said Act which are not germane to the title of the amending Act.

The Probate Act deals with the subject of wills and the administration of estates. It treats wills, dower, and administration as one subject. The purpose of Chapter 18999 was to limit dower for the widow without lineal descendants to a child's part irrespective of the will. We find nothing in the body of the Act that is not germane to the title and the latter is sufficient to apprise the Legislature and the public of what the body of the Act contemplates; in fact the title is almost as comprehensive as the body of the Act.

On the question of whether or not Chapter 18999 embraces more than one subject, little need be said. Appellees base this contention on the fact that the Act deals with several subjects as one. In the abstract there might be merit to this contention but here we are concerned primarily with the widow's part of the inheritance and whether called dower or by some other name, it is certain that the Act in question was designed to limit dower to a child's part regardless of the will or any other instrument affecting it. We have examined the cases relied on and we do not see that any of them hold contrary to this view.

This brings us to the main appeal which turns on the interpretation of the trust deed. Appellees contend

that it (trust deed) created a vested remainder in the beneficiaries named in the will and relieved the estate from administration under the will. They rely on Padfield v. Padfield, 72 Ill. 322, and like cases to support this contention. Appellants contend on the other hand that the trust deed created a life estate in the settlor and at his death, the entire estate reverted to his representatives to be administered under the will. They rely on Hoskin v. Long Island Loan and Trust Company, 139 App. Div. 258, 123 N. Y. S. 994, affirmed in 203 N. Y. 588, 96 N. E. 1116; Sperry v. Farmers Loan and Trust Company, 154 App. Div. 447, 139 N. Y. S. 192.

The chancellor held that the will and the trust deed construed together created a vested remainder in favor of the beneficiaries named in the will which was not affected by Chapter 18999. This interpretation reduces the question to that of whether or not a vested remainder or a reversion was created by the trust deed. If the estate passes direct to the beneficiaries named in the will by virtue of the trust deed and nothing more remains to be done, a vested remainder was created but if it created a bare life estate in the settlor, subject to revocation at any time and at his death something contingent remains to be executed or some expressed purpose remains to be completed, then the estate reverts as directed in the trust deed and a reversion is created.

Stated alternatively, if the inducement in the trust deed is by words of purchase, a vested remainder is created, but if it is by words of limitation, the estate reverts at the death of the settlor and a reversion is created. This question must be determined by an examination of the trust deed but good authorities say

that if it falls within any of the following rules, a reversionary estate and not a vested remainder is created : (1) If it transfers the estate in trust with directions to pay the income to the settlor for a certain period at which time the corpus is to be returned to him, (2) If it turns the estate into a trust with directions to pay the income to the settlor for life and at his death the corpus to be returned to his estate, or (3) If conveyed in trust with directions to pay the settlor the income for life and at his death to dispose of the corpus as he may by deed or will designate or if no other provision be made that it go to his heirs as the law directs.

A great many cases are cited in briefs of counsel and as *amicus curiae* but they all turn on the interpretation of the granting instrument. The difficulty is to ascertain the intent of the grantor and give it effect. We make no attempt at analyzing cases because all have their variations and the terms of the instrument in each case must govern. In reaching this conclusion, the entire instrument rather than isolated portions of it should control.

The will of Frank Adams names the subjects of this bounty and the portion each is to receive. The trust deed is silent on this point but requires the trustees to convey the estate at his death to his personal representatives to be administered according to the terms of his will. It is true that the trust deed also contains an assignment of the trust estate to those named in the will but this is conditional on what portion the settlor's wife elects to take as dower and in any event each distributive part must pass through the personal representative named in the will.

The Adams trust deed provides that the trust shall terminate with the death of the settlor at which time the trustees are required to convey the trust property to his (settlor's) representative. The trust deed then provides that the trust estate so conveyed together with such other property that the settlor may own at the time of his death shall constitute his estate and requires its distribution as required in the will and codicils.

After these declarations the trust deed then assigns, sets over, transfers, and conveys the remaining trust estate to the persons and in the respective amounts described in the will and the codicils thereto. This requirement is followed by the following proviso:

". . . Provided, however, that in the event settlor's said wife Rubye Wilder Adams survives the settlor and elects to take dower in lieu of the provisions made for her in said will and codicils, then and in that event, notwithstanding anything to the contrary herein contained, the settlor assigns, transfers, conveys, and sets over to said Rubye Wilder Adams the same proportion of the said Remaining Trust Estate (as above defined) as she would be entitled to if this Trust deed has been owned by the settlor absolutely "at the time of settlor's death."

The provision of the trust deed immediately preceding this proviso is the sole reliance of appellees on which to hang a vested remainder. If it were permissible for one isolated portion to govern the interpretation of the trust deed, we would be persuaded to agree with them but when the entire instrument is considered, we find no intention on the part of the settlor to create a vested remainder for the benefit of his wife and children.

The provision for a life estate in the settlor with reversion to his personal representatives to be administered by the probate court under the terms of the will and the right of the wife to elect dower in lieu of the provision for her in the will lead us to the conclusion that nothing more than a reversionary interest was created by the trust deed. It would be impossible for the wife to elect dower in lieu of the provision for her in the will if this were not the case. Other requirements of the trust deed would also be unenforceable and since this is the case, we do not think the part of the trust deed relied on by appellees to create a vested remainder becomes operative until after the reversion and the administration under the will takes place. This rendering of the trust deed makes it logical; any other renders it ambiguous.

The general rule is that a grant to trustees for life creates a reversion in the grantor and leaves nothing to his heirs by way of remainder unless the plain unambiguous language of the trust instrument shows a contrary intent. Such is the clear implication from John v. Bowden, 68 Fla. 32, 66 So. 155, and the cases heretofore cited and relied on by appellants. The case at bar falls into this rule.

Does Chapter 18999, Acts of 1939, control the will of Frank Adams, it having been executed prior to the passage of the Act?

Counsel contend that this question should be answered in the negative and cite many cases to support their contention. The general rule deduced from all these cases is that a will is ambulatory and takes effect as if executed immediately prior to the testator's death. Such is the mandate of the Probate Act, Section 6, Compiled General Laws, 5477 (2).

We find no exception to this general rule except as to statutes defining formalities of execution, the effect of marriage on the will, the testamentary incapacity of married women, and the status of after acquired property under the will. These contingencies are taken care of by the Florida Probate Act, so we are confronted with none of them in this case and no good purpose would be served by a discussion of them. Under the Probate Act, there is no vested right under a will until after the death of the testator. Until this time, it is competent for the Legislature to direct devolution of property under the will. The decided weight of authority supports this view and the terms of the Probate Act conclude the point.

From this, it follows that the judgment of the chancellor is reversed on the main appeal and affirmed in all other respects on the cross appeal.

Affirmed in part; reversed in part.

BROWN, C. J., WHITFIELD, BUFORD, CHAPMAN, and THOMAS, J. J., concur.