QUESTIONS:
1. Does H.B. 2064 (Ch. 77-209, Laws of Florida, s. 125.0104, F. S.), the Local Option Tourist Development Act, authorize the creation of more than one subcounty special taxing district within a single county?
2. Does Ch. 77-209, Laws of Florida, authorize a county to levy a 1 percent tourist development tax countywide and an additional 1 percent tourist development tax in one or more subcounty special districts?
SUMMARY:
A county may not, pursuant to Ch. 77-209, Laws of Florida, impose a 1 percent tourist development tax countywide and an additional tourist development tax in a subcounty special district, nor may a county create more than one subcounty special district within which to impose the tax. Under Ch. 77-209, if a county decides to impose the tax, it must do so on a countywide basis or within a single subcounty special district which must embrace all or a significant contiguous portion of the county.
Section 3(2) of Ch. 77-209, Laws of Florida (s. 125.0104(3)(b), F. S.), provides in pertinent part as follows:
 Subject to the provisions of this act, any county in this state may impose a tourist development tax. . . . A county may elect to levy and impose the tourist development tax in a
subcounty special district of the county; provided, however, if a county so elects to levy and impose the tax on a
subcounty special district basis, the district shall embrace all or a significant continuous portion of the county. . . . (Emphasis supplied.)
Section 4(1) of Ch. 77-209, supra (s. 125.0104(4)(a), F. S.), provides in part:
 The ordinance levying and imposing the tourist development tax shall not be effective unless the electors of the county or the electors in the subcounty special district in which the tax is to be levied approve the ordinance authorizing the levy and imposition of the tax in accordance with s. 6 of this act. (Emphasis supplied.)
 In addition, s. 4(3) (s. 125.0104(4)(c), F. S.) provides that the tourist development plan to be prepared by a county's tourist development council prior to imposition of the tourist development tax shall set forth, among other things, `the tax district in which the tourist development tax is proposed.' (Emphasis supplied.)
 On its face, the language of the act contemplates and authorizes the creation of only one taxing district for purposes of imposing the tourist development tax within a given county, and that district must embrace, at a minimum, a significant contiguous portion of the county. Every reference to the creation of such a district is in the singular. Furthermore, in the contest in which the term `elect' is used by the Legislature (in referring to a county's decision to levy the tax in a subcounty special district), the language manifests an intent that the county be put to a choice of exclusive alternatives, i.e., the imposition of tax by the county on a countywide basis or the imposition of the tax in a special district of which the county commission is the governing head. See, generally 28 C.J.S. Elect, Election, pp. 1052-53. See also First Nat'l Bank of St. Petersburg v. MacDonald, 130 So. 596, 599 (Fla. 1930); State ex rel. Van Ingen v. Panama City, 171 So. 760, 762 (Fla. 1937); Alexander v. Booth, 56 So.2d 717, 719 (Fla. 1952); Williams v. Duggan, 140 So.2d 69, 72 (1 D.C.A. Fla., 1962). Nowhere does the plain language of Ch. 77-209, supra, express a clear legislative intent that a county may impose the tourist development tax simultaneously on a countywide basis and in a subcounty special district or create more than one subcounty special district for levy of the tax.
 It is settled law that nonchartered counties and special districts have only such authority as expressly granted by statute and such authority as necessarily implied to enable the governmental unit to carry out an expressly granted power. See e.g., White v. Crandon, 156 So. 303 (Fla. 1934); Harvey v. Board of Pub. Instr., 133 So. 869 (Fla. 1931); Hopkins v. Special Rd. Tax Dist. No. 4, 74 So. 310 (Fla. 1917). The foregoing rules apply with equal force to chartered counties, except that such counties are governed and limited by their charters and by special laws approved by a vote of county electors as well as by general law. Section 1(c) and (g), Art. VIII, State Const. See also General Elec. Credit Corp. v. Motropolitan Dade County, 346 So.2d 1049, 1054 (3 D.C.A. Fla., 1977), holding Ch. 380, F. S., a general law equally at force throughout the state, prevails over code of Metropolitan Dade County to extent of conflict. Chapter 77-209, supra, being a general law equally at force throughout the state, applies to charter counties as well as to nonchartered counties. Indeed, under s. 9(a), Art. VIII, of the State Constitution, a charter county is without power to levy an excise tax such as the tourist development tax unless authorized by general law to do so. City of Tampa v. Birdsong Mtrs., Inc., 261 So.2d 1 (Fla. 1972); Belcher Oil Co. v. Dade County, 271 So.2d 118 (Fla. 1972); AGO 074-379. Chapter 77-209 expressly authorizes only two modes of imposing the tourist development tax: countywide or within a subcounty special district. Nothing within the statute allows the implication that, to carry out the purposes of the enabling act, the counties must be able to create more than one taxing district or to levy the tax in such district in addition to a countywide levy. Additionally, with regard to the mode by which a local government may proceed to carry out a legislative mandate, it has been held:
 When the Legislature has prescribed the mode, that mode must be observed. When controlling laws directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way.
 Alsop v. Pierce, 10 So.2d 799, 805-806 (Fla. 1944). See also In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520, 523 (Fla. 1975).
 Moreover taxation and revenue laws are to be strictly construed and will not be construed to extend taxing power beyond that clearly expressed. Department of Revenue v. Brookwood Associates, Ltd., 324 So.2d 184 (1 D.C.A. Fla., 1975). See also T. Cooley Law of Taxation, pp. 266-67 (1972 rev.). In accordance with that rule, statutes which delegate to local government the power to impose a tax are also narrowly construed. No power to taxation will be held valid if not within the clear terms of the enabling statute. See
Tampa v. Birdsong Mtrs., Inc., supra; Belcher Oil Company v. Dade County, supra; 3 Sutherland Statutory Construction ss. 66.01 and 66.05 (1974 ed.)
 Without any definitive expression of legislative intent to the contrary, the language of Ch. 77-209, supra, and the foregoing principles of statutory construction compel the conclusion that a county may not levy a 1 percent tourist development tax countywide and an additional tourist development tax in a subcounty special district. Nor may the county create two or more subcounty special districts for the purposes of Ch. 77-209 or levy the tourist development tax within two or more such districts.
Accordingly, both questions are answered in the negative.
Prepared by: Daniel C. Brown Assistant Attorney General